UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

_____
                                                  )
In re:                                  )
                                                  )
OSCAR SQUARED, INC.,          )         Chapter 11
                                                  )
           Debtor            )         Case No. 18-10223-MSH
                                                  )
_____)

## **CHAPTER 11 PLAN OF REORGANIZATION**

**Dated: April 11, 2019**

                                  OSCAR SQUARED, INC.

                                  By its attorneys,

                                  MADOFF & KHOURY LLP
                                  124 Washington Street, Suite 202
                                  Foxboro, MA 02035
                                  (508) 543-0040

## Introduction

The debtor, Oscar Square, Inc. (the "Debtor") hereby proposes the following Plan of Reorganization (the "Plan") pursuant to Sections 1121 et seq. of the United States Bankruptcy Code.

## Summary of the Plan

The Debtor is a Massachusetts corporation located in Taunton, Massachusetts. It filed a single asset Chapter 11 petition on January 24, 2018. As of the Petition Date, the Debtor owned several parcels of undeveloped land located on Berkley Street, Taunton, Massachusetts (the "Taunton Property"). During the course of its Chapter 11 proceeding, the Debtor obtained approval for the sale of the Taunton Property, and ultimately sold such property. Except for the payment of the ordinary and usual costs paid by a seller of real estate in Massachusetts and the payment of outstanding real estate tax on the property, all of the proceeds from the sale were paid to Mechanics Cooperative Bank ("Mechanics"), which held the first mortgage on the Taunton Property.

Subsequent to the sale of the Taunton Property, the Debtor ceased operations. The assets of the Debtor are comprised solely of the accounts receivable owed to the Debtor by its affiliates and the Plan will be funded from the collection of those amounts (the "Collected Proceeds"). The Plan contemplates satisfaction of the secured creditors, administrative claims and non-tax priority claims. The Plan further provides for the payment of the priority claims of the taxing authorities, with monthly payments, including appropriate interest. The payments to the taxing authorities will be made on the earlier of (i) the date on which all of the Collected Proceeds are received by the Debtor or (ii) over a four-year period from the Petition Date. Finally, the Plan provides for the payment from the remaining Collected Proceeds, a pro rata distribution to the holders of allowed, general unsecured claims which the Debtor estimates will equal approximately 11% of such claims. The Plan provides for an initial 2.5% distribution to the holders of allowed, general unsecured claims on the Effective Date and the balance of such distribution on the earlier of the date on which all of the Collected Proceeds are received by the Debtor or two years from the Effective Date.

## ARTICLE I

## DEFINITIONS

Capitalized terms used herein shall have the meanings ascribed to them below, and such meanings shall be equally applicable to both the singular and plural forms of such terms. Terms defined in the Bankruptcy Code shall have the meanings ascribed to them in the Bankruptcy Code, unless the context clearly requires otherwise.

1.1    "Administrative Claim" means a Claim or expense entitled to priority under Section 503 of the Bankruptcy Code.

  1.2 "Allowed" or "Allowed Claim" means a Claim, proof of which was timely filed in the Proceedings or that has been, or hereafter is, listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and, in either case, as to which no objection to the allowance thereof has been timely filed within the applicable period of limitation therefor or, or where an objection has been filed, such Claim has been allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

  1.3 "Avoidance Action" means any causes of action commenced pursuant to Sections 544, 547, 548, 550, and 551of the Bankruptcy Code.

  1.4 "Bankruptcy Code" means Title 11 of the United States Code.

  1.5 "Claim" means a right to payment or a right to an equitable remedy as set forth in Section 101 of the Bankruptcy Code.

  1.6 "Confirmation Date" means the date on which the Confirmation Order is entered.

  1.7 "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan under Section 1129 of the Bankruptcy Code.

  1.8 "Debtor" means Oscar Squared, Inc.

  1.9 "Disclosure Statement" means the Disclosure Statement with respect to the Debtor's Chapter 11 Plan of Reorganization dated April 11, 2019.

  1.10 "Effective Date" means the first business date following the date on which the Confirmation Order becomes a Final Order.

  1.11 "Final Decree" means a Final Order of the Bankruptcy Court closing the Debtor's Chapter 11 proceedings.

  1.12 "Final Order" means an order of a court that has not been reversed, vacated, stayed, modified or amended, and which is no longer subject to appeal or certiorari proceeding and no appeal or certiorari proceeding is pending.

  1.13 "Petition Date" means January 24, 2018.

  1.14 "Plan" means the within Plan of Reorganization, either in its present form or as it may be amended from time to time in accordance with the terms hereof and the applicable provisions of the Bankruptcy Code.

  1.15 "Proceedings" means the Chapter 11 proceedings commenced by the Debtor.

  1.16 "Professional Person" means a person employed by the Debtor pursuant to Section 327 of the Bankruptcy Code.

1.17 "Reorganized Debtor" means the Debtor as it exists on and after the Effective Date as reorganized under and pursuant to the Plan.

1.18 "Schedules" means the Schedules of Assets and Liabilities of the Debtor filed with the Bankruptcy Court in this case.

## ARTICLE II

## DESIGNATION OF CLAIMS AND INTERESTS

2.1 Classes 1 consists of the Secured Claim against the Debtor.

2.2 Class 2 consist of the Prepetition Priority Non-Tax Claims of the Debtor.

2.3 Class 3 consist of the Prepetition Priority Tax Claims of the Debtor.

2.4 Classes 4 consists of the General Unsecured Claims of the Debtor.

2.5 Class 5 consists of the Equity Interests in the Debtor.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

**3.1    Class 1 – Allowed Claim of Mechanics Cooperative Bank**

Mechanics asserted a claim against the Debtor, as of the Petition Date, in the amount of $410,896.32. This obligation arises out of a certain promissory note dated November 2, 2006 in the original principal amount of $400,000.00 (the "Mechanics Note"). The Mechanics Note was secured by a mortgage granted by the Debtor encumbering the property known as Lots 6,7, and 8 Berkley Street, Taunton, Massachusetts, which lots are now known as Lots 138A, 188A & 189A, and Parcels A & B, Berkley Street, Taunton, Massachusetts (the "Taunton Property"), an assignment of leases and rents regarding such property, as well as a guarantee of the principal of the Debtor, Richard O. Feodoroff ("Feodoroff").

On March 9, 2018, the Debtor filed Debtor's Assented-To Motion For Authority To Sell Real Estate Property By Private Sale Free And Clear Of All Liens, Claims, Encumbrances And Interests (the "Motion To Sell"), wherein the Debtor sought authority to sell the Taunton Property to Dereck Varley, or his nominee, for the sum of $390,000.00. The Motion To Sell proposed that, other than the ordinary and usual closing costs paid by a seller of real estate in Massachusetts, and any assessed real taxes that were due and owing, all of the remaining proceeds from the sale (the "Remaining Sale Proceeds") were to be paid to Mechanics. Mechanics assented to the Motion To Sell, and on April 5, 2018, the Bankruptcy Court entered

an order approving the Motion To Sell.  The closing on the sale of the Taunton Property occurred on May 1, 2018, and the sum of $370,003.14 was paid to Mechanics.

After the payment of the Remaining Sale Proceeds to Mechanics, Mechanics had an outstanding balance owed under the Mechanics Promissory Note (the "Mechanics Balance") in the amount of $40,893.18. This amount was subsequently paid by the principal of the Debtor, Feodoroff and his wife. Nevertheless, to the extent that any amounts may be currently owed to Mechanics under the Mechanics Note, such amount will be treated as the holder of an allowed Class 4 claim.

*Class 1 is unimpaired.*


### 3.2     Class 2 – Priority Claims (Non-Tax) against the Debtor

Class 2 is comprised of all holders of non-tax Allowed Claims entitled to priority. Section 1129(a)(9)(A) of the Code requires, with respect to priority claims that, except to the extent the holder of such priority claim has agreed to a different treatment of such claim, on the effective date of the plan, holders of such claims "receive on account of such claim cash equal to the allowed amount of such claim."  Under the Plan, holders of Allowed Class 2 claims, if any, will receive cash payment in the full amount of their claims on the effective date.  The Debtor believes that there are no such non-tax priority claims.

*Class 2A is unimpaired.*


### 3.3     Class 3 – Priority Tax Claims against the Debtor

Priority claims also include certain tax claims, as set forth in Section 507(a)(8) of the Bankruptcy Code.  The treatment of priority and secured tax claims is set forth in Section 1129(a)(9)(C) and (D) of the Code.

The following creditors have asserted Class 3 Claims against Debtor: (i) the Internal Revenue Service (the "IRS") has asserted a priority claim in the amount of $29,148.26; (ii) the Massachusetts Department of Revenue (the "MDOR") has asserted a priority claim in the amount of $6,594.01; and (iii) the Massachusetts Department of Unemployment Assistance (the "DUA") has asserted a priority claim in the amount of $40,643.82.  The Debtor asserts that each of these claims is overstated and may object to such claims if the parties cannot agree on the amount of such claims.  The Debtor maintains that the accurate amount of these priority claims are as follows: IRS--- $10,627.74; MDOR ---$5,224.25; and DUA--- $802.88.

The holders of Allowed Class 3 Claims shall receive payment in full of such claims, including appropriate interest, pursuant to Section 511 of the Bankruptcy Code, IRC Sections 6621 and 6622 (as to the IRS claim), and Massachusetts General Laws Ch. 62C, Section 32(a) (as to the claims of the Commonwealth of Massachusetts).  The payments to the taxing authorities will be made on the earlier of (i) the date on which all of the Collected Proceeds are

received by the Debtor or (ii) over a four-year period from the Petition Date. The payment to the holders of Allowed Class 3 Claims shall commence on the later of: (i) the seventh (7th) day of the first full month after the Effective Date; or (ii) the date on which such Claim is Allowed.  Until the Debtor receives all of the Collected Proceeds, the Debtor will continue to make monthly payments of principal and interest to each of the taxing authorities.  Each of the taxing authorities shall retain the same priority and secured status as they have on the date hereof until each such claim is fully satisfied.

*Class 3 is unimpaired*.

### 3.4	Class 4 – Allowed General Unsecured Claims against the Debtor

Class 4 is comprised of all holders of Allowed general unsecured claims against the Debtor.  This class includes trade claims owed by the Debtor, the undersecured portion of any purported secured claims, and any portion of a claim of a taxing authority not entitled to treatment as secured or priority claim.  The estimates that there will be approximately $440,00.00 in allowed Class 4 claimants.

As noted above, subsequent to the sale of the Taunton Property, the Debtor's only remaining asset are the Accounts Receivable owed to it by its affiliated companies.  The Debtor estimates that it may be able to collect approximately $78,000.00 of those receivables.  The Plan provides that from the remaining Collected Proceeds, a pro rata distribution will be made to the holders of allowed, general unsecured claims, which the Debtor estimates will equal approximately 11% of such claims, and which payment will be made in full settlement and satisfaction of such claims.  An initial 2.5% distribution to the holders of allowed, general unsecured claims will be made on the Effective Date of the Plan. The balance of the distribution to such creditors will be made on the earlier of the date on which all of the Collected Proceeds are received by the Debtor or two years from the Effective Date.

*Class 4 is impaired.*

### 3.5	Class 5 – Equity Interests

Class 5 is comprised of all equity interests in the Debtor.  Feodoroff is the sole holder of equity interests in the Debtor.  The holder of the equity interests shall receive no distribution under the Plan on account of such interests, but will retain unaltered, the legal, equitable and contractual rights to which such interests were entitled as of the Petition Date.

*Class 5 is unimpaired.*

# ARTICLE IV

## TREATMENT OF ADMINSTRATIVE CLAIMS

4.1	*Administrative Expense Claims.*  Holders of Allowed Claims for administrative expenses that have been incurred in the ordinary course of the Debtor's business shall be paid in

6

the ordinary course of business, including the United States Trustee Quarterly Fees.  All other holders of Allowed Claims for administrative expenses shall be paid the full amount of such Allowed Claim in cash at confirmation, unless a different treatment is mutually agreed upon by the claimant and the Debtor.

4.2     *Bar Date for filing Administrative Expense Claims (Professional Persons)*  All administrative claims relating to expenses incurred during the Debtor's reorganization case, on account of the employment of Professional Persons, as defined in Article I, above, at least through and including thirty (30) days prior to the first date scheduled for the Confirmation Hearing, shall be made the subject of applications for allowance of fees and reimbursement of expenses ("Fee Applications") which shall be filed on or before _____ **at 4:30 P.M.**  Any such Fee Application may include a request for payment of anticipated fees and expenses through the Effective Date of the Plan to the extent such fees and expenses can be reasonably determined.

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

5.1     **Consummating the Plan**.  On the Effective Date of the Plan, the Debtor shall commence making payments under the Plan.  All property of the Debtor, including property of the estate under 11 U.S.C. Section 541, shall be vested in the Debtor free and clear of any claims, liens and encumbrances, except for the liens granted hereunder or to be retained under the Plan.

5.2     **Property of Estate**.  As of the Effective Date, all property of the Debtor, including property of the estate under 11 U.S.C. §541, shall be vested in the Debtor free and clear of any and all claims, liens, and encumbrances, except for the liens granted hereunder or to be retained under the Plan.

5.3     **Objections to Prepetition Claims.**   No claim will be paid unless it is allowed by the Bankruptcy Court.  If a creditor has filed a proof of claim before the deadline established by the Court, then the claim will be automatically allowed unless a Debtor or another interested party files a written objection with the Court within 30 days of the Effective Date of the Plan.  Similarly, even if a creditor did not file a proof of claim, if the claim is listed in the Schedules of Liabilities filed by the Debtor as an obligation that is not disputed, unliquidated or contingent, then then the claim will be automatically allowed unless an objection is filed with the Court within 30 days of the Effective Date of the Plan.

5.4     **Objections to Administrative Claims.**  Any claim entitled to priority under Code Section 503(b), except for claims of Professional Persons, shall be forever barred unless it is the subject of a proof of claim filed with the Bankruptcy Court and served by the Administrative Claim Bar Date.  Such proof of claim will be allowed in full unless such claim is objected to within 30 days of the Effective Date of the Plan.

5.5     **Distribution Reserve.**  In order to ensure that there are funds available to make the appropriate distribution on account of disputed claims that are ultimately allowed (in whole or in part), the Debtors shall hold in reserve the pro-rata amount to which such holder would be entitled if its claim were allowed in the full amount asserted.  If a claim to which an objection has been filed is allowed by the Court, the holder will receive the amount to which it is entitled.  If the claim is allowed in a reduced amount or disallowed, then the reserved funds not necessary to pay the claim will go back to the Debtor.

5.6     **Distributions**

a.     Delivery of Distributions. Distributions, deliveries, and any notice to holders of Allowed Claims will be made at (i) the addresses set forth in any proof of claim filed by the holders of such Allowed Claims or, if none, at the address set forth in the Debtor's Schedules, or (ii) at the addresses set forth in any written notices of address changes delivered to and received by the Debtor after the Effective Date.  If any Distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all returned Distributions will be made to the holder without interest.  All claims for undeliverable Distributions must be made to the Debtor on or before one hundred and twenty (120) days from the date of mailing or other form of delivery of such Distribution.  After that date, all unclaimed property shall be repaid to the Debtor and the Claim of any holder with respect to such property will be discharged and forever barred.

b.     Time Bar to Cash Payments.  Checks issued by the Debtor in respect of Allowed Claims will be null and void if not cashed within 90 days of the date of their issuance.  Requests for reissuance of any check shall be made to the Debtor by the holder of the Allowed Claim which respect to which the check originally was issued.  Any claim in respect of such a voided check must be made on or before one hundred and twenty (120) days after the date of issuance of the check (unless extended in the sole and exclusive discretion of the Debtor).  After that date, all claims in respect of void checks will be discharged and forever barred and the cash, including interest earned thereon, if any, shall be distributed in accordance with the terms of this Plan.

c.     De Minimis Distributions.  No cash payment of less than ten dollars ($10.00) will be made by the Debtor to any creditor unless a request is made in writing to the Debtor to make such a payment within 45 days after the date that such payment became due.

5.7     **Discharge**

Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, pursuant to Section 1141(d)(1) of the Bankruptcy Code, the Debtor shall be discharged and released of and from any and all debts, liabilities of Claims arising on or before the Confirmation Date, including, without limitation, all principal and interest, and whether or not (a) a proof of claim or interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) such Claim or Interest is Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim or Interest has accepted the Plan.

Nothing in the Plan shall discharge or release the obligations of non-Debtor guarantors, to the extent such guaranties may exist, to creditors of the Debtor.

5.8    **Other Duties and Responsibilities of the Debtor.**  In addition to the various obligations and duties of the Debtor described elsewhere in the Plan, the Debtor shall have the following specific duties and powers:

a.    preparation and filing of all required tax returns including the right to request a determination of tax liability as set forth in Bankruptcy Code Section 505;

b.    preservation or liquidation of assets or the distribution of proceeds of assets;

c.    payment of post-confirmation fees due to the Office of the United States Trustee;

d.    filing of status reports with the Bankruptcy Court or other parties in interest; and

e.    filing a motion for Final Decree;

5.9    **Obligations to the United States Trustee.**  The Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, the Debtors will serve the United States Trustee with a monthly financial report for each month (or portion thereof) the case remains open.  The monthly financial report shall include the following:

a.    a statement of all disbursements made during the course of the month, whether or not pursuant to the plan;

b.    a summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

c.    Debtor's projections as to its continuing ability to comply with the terms of the Plan;

d.    a description of any other factors which may materially affect the Debtor's ability to consummate the plan; and

e.    an estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

# ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     **Assumption or Rejection.**  The Bankruptcy Code permits the rejection of executory contracts and unexpired leases that are burdensome to the Debtor's estate.  As of the Effective Date, all executory contracts and unexpired leases, except those expressly assumed by prior Court order, shall be deemed rejected.

6.2     **Claims.**  Any claim for damages arising from the rejection of an executory contract or unexpired lease shall, upon allowance, be a Class 4 general unsecured claim against the estate of the Debtor.  Proof of such Claim must be filed by the later of the Bar Date or 30 days after entry of an order rejecting such executory contract or unexpired lease, or the claimant shall be forever barred from asserting such Claim.

# ARTICLE VII

## ACCEPTANCE AND CONFIRMATION OF THE PLAN

7.1     **Who May Vote.**  Bankruptcy law provides that any class of creditors or stockholders whose rights are "impaired" under any proposed plan of reorganization has the right, as a class, to accept or reject the plan.  Each member of the class may vote on this decision.  A class of creditors accepts the plan if more than one-half of the ballots that are timely received from members of the class, representing at least two-thirds of the dollar amount of the claims for which ballots are timely received, are voted in favor of the plan.  In the Plan, Class 4 is impaired, and may therefore vote to accept or reject the Plan.  Classes 1, 2, 3 and 5 are unimpaired and may not vote.

7.2     **Submission of Ballot.**  Included in the same envelope containing this document is a ballot by which you may vote to accept or reject the Plan.  Instructions for completing and returning the ballot are found on the ballot itself.  IN ORDER FOR YOUR VOTE TO COUNT, IT MUST BE RECEIVED BY THE UNDERSIGNED COUNSEL NOT LATER THAN _____ .

7.3     **Hearing and Objections.**  The Bankruptcy Court has scheduled a hearing on confirmation of the Plan for _____ which shall be held in the United States Bankruptcy Court before the Honorable Melvin S. Hoffman, John W. McCormack Post Office & Courthouse, 5 Post Office Square, Room 2, Boston, Massachusetts 02109.  Any objection to confirmation of the Plan must be filed with the Bankruptcy Court and served on Debtor's Counsel, by _____ **.** The Plan will be confirmed if it meets the requirements set forth in the Bankruptcy Code.

7.4     **Reservation.**  Assuming that the Plan is otherwise confirmable, the Debtor reserves the right to seek confirmation even if one or more classes vote to reject the Plan.  In addition, the Debtor reserves the right, in order to resolve any objection to confirmation of the

Plan or otherwise, to modify the Plan without further notice or disclosure, so long as the modification does not adversely change the treatment of any creditor who has not accepted the modification.

## ARTICLE VIII

## JURISDICTION

8.1     **Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction of the Proceedings pursuant to the provisions of Chapter 11 of the Bankruptcy Code until the final allowance or disallowance or all Claims affected by the Plan and the disposition of all property of the estate, and for the following purposes:

    a.     To enforce any order, judgment or ruling previously entered herein;

    b.     To interpret or construe the Plan and any and all provisions thereof or any order previously entered herein;

    c.     To insure that the purpose and intent of the Plan are effectuated;

    d.     To hear and determine any and all matters, controversies and disputes regarding the Plan;

    e.     To hear and determine all Claims against the Debtor or against property of the Debtor or any and all objections to the allowance of such Claims which are not adjudicated or settled prior to the Confirmation Date and to determine participation, if any, under the Plan;

    f.     To hear and determine any and all applications, adversary proceedings and contested matters properly pending on the Confirmation Date or properly brought thereafter;

    g.     To hear and determine any and all claims arising from the assumption or rejection of Executory Contracts, and to consummate such assumption or rejection;

    h.     To adjudicate all controversies concerning the classification of any claims;

    i.     To liquidate damages in connection with any disputed, contingent, or unliquidated Claim;

    j.     To adjudicate all claims of a security or ownership interest in any property of the estates or in any proceeds thereof;

    k.     To adjudicate any claim or controversy out of any purchase, sale or contract made or undertaken by the Debtor during the Proceedings;

      l.      To modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

      m.      To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

      n.      For any other purpose specifically set forth in the Confirmation Order;

      o.      To make such orders as are necessary or appropriate to effectuate the provisions of the Plan; and

      p.      To enter a final decree closing the Chapter 11 case.

## ARTICLE IX

## MISCELLANEOUS

      9.1      **Payment Dates.**  Whenever any payment or distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

      9.2      **Headings.**  The headings used in the Plan are inserted for convenience only and neither constitutes a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

      9.3      **Construction.**  The rules of construction set forth in Section 102 of the Code shall apply to construction of the Plan.

      9.4      **Severability.** Should any provision in the Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

      9.5      **Revocation.**  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

      9.6      **Time.**  In computing any period of time prescribed or allowed by this Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.  When the period of time prescribed or allowed is less than eight calendar days, intermediate days that are not Business Days shall be excluded in the computation.

9.7     **Amendments to Plan.**  This Plan may be amended, modified or supplemented by the Debtor before or after the Confirmation Date in the manner provided for by Section 1127 of the Code.

9.8     **No Interest.**  Except as expressly stated in this Plan or allowed by a Final Order of the Bankruptcy Court, no interest, penalty or late charge is allowed on any Claim or Interest subsequent to the Petition Date.

9.9     **No Attorneys' Fees.**  No attorneys' fees shall be paid with respect to any Claim or Interest except as specified herein or as allowed by a Final Order of the Bankruptcy Court.

9.10    **Amounts of Claims and Interests.**  All references to Claims and Interests and amounts of Claims and Interests refer to the amount of the Claim or Interest allowed by Final Order by the Bankruptcy Court or by this Plan.  Claims and Interests which have been objected to and which have not been allowed or disallowed prior to the day set for return of ballots shall not be entitled to be voted and be counted unless the claimant has obtained an Order of the Bankruptcy Court estimating the claim for purposes of voting on the Plan.  Interested parties reserve the right, both before and after the Confirmation, to object to Claims and Interests so as to have the Court determine the Allowed Amount of such Claim or Interest to be paid under this Plan.

9.11    **No Waiver of Discharge**.  Except as otherwise specifically provided herein or by prior Order of this Court, nothing in this Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon confirmation of the Plan in Section 1141 of the Bankruptcy Code.

9.12    **Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts.

9.13    **Successors and Assigns.**  The rights, duties and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

Respectfully submitted this 11th day of April 2019.

                                                  OSCAR SQUARED, INC.

                                                By: */s/  Richard O. Feodoroff*
                                                Richard O. Feodoroff, President

Filed by its attorneys

*/s/  James C. Gross*
David B. Madoff (BBO#552968)
James C. Gross (BBO#212740)
MADOFF & KHOURY LLP
124 Washington Street, Suite 202
Foxborough, MA 02035
(508)  543-0040
gross@mandkllp.com